IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

JESSE ARTHUR BISHOP,          )
     Plaintiff,               )
                             )
        v.                  )     Civil No. 3:13-cv-94 (REP)
                             )
CAROLYN W. COLVIN,           )
Commissioner of Social Security,    )
     Defendant.            )
_____)

## REPORT AND RECOMMENDATION

Jesse Arthur Bishop ("Plaintiff") is 48 years old and previously worked as a stone mason. On May 30, 2007, Plaintiff applied for Social Security Disability ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), claiming disability due to lumbar and cervical spine herniated discs, knee problems, chronic obstructive pulmonary disease ("COPD"), periphery artery disease and compressed shoulder nerve with disability beginning on December 8, 2007. Plaintiff's applications were denied initially and upon reconsideration. An Administrative Law Judge ("ALJ") held a hearing on October 30, 2009. The ALJ denied Plaintiff's claims. The Appeals Council ordered the ALJ to obtain Vocational Expert ("VE") testimony on the effect of Plaintiff's non-exertional limitations on the occupational base for light work.

On July 27, 2011, the ALJ held a second hearing in which Plaintiff and a VE testified. On August 12, 2011, the ALJ concluded that Plaintiff was not disabled. The Appeals Council subsequently denied review of the ALJ's decision, thereby rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now challenges the ALJ's decision, arguing that the ALJ erred in affording no weight to Plaintiff's treating physician's opinion, that substantial evidence does not support the ALJ's residual function capacity ("RFC") assessment, that the ALJ's incorrectly analyzed Plaintiff's credibility and that the VE's testimony should result in a fully favorable disposition or, in the alternative, that the ALJ's hypotheticals posed to the VE were flawed.

Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). The parties have submitted cross-motions for summary judgment, which are now ripe for review.[1] Having heard oral argument and reviewed the parties' submissions and the entire record in this case, the Court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 7) be DENIED; that Defendant's Motion for Summary Judgment (ECF No. 9) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. BACKGROUND

Because Plaintiff challenges the ALJ's decision, Plaintiff's education and work history, medical history, medical opinions, Plaintiff's reported activities of daily living ("ADLs"), Plaintiff's hearing testimony and VE testimony are summarized below.

---

[1]     The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

A.     Plaintiff's Education and Work History.

Plaintiff is 48 years old and graduated from high school.  (R. at 300, 357.)  From 1983 until 2007, Plaintiff worked as a self-employed stone mason.  (R. at 352, 440.)  He has been unable to work since December 2007 due to his impairments.  (R. at 351.)

B.     Plaintiff's Medical History.

1.  Medical History

Plaintiff complained of low back pain, lower leg pain, hip pain and numbness since October 2005.  (R. at 755.)  A lumbar spine MRI in November 2005 revealed a probable hemangioma and mild lower lumbar spondylosis.  (R. at 755.)  Howard Stern, M.D. prescribed physical therapy and Percocet.  (R. at 757, 760.)

In December 2006, Plaintiff was diagnosed with an occluded iliac artery.  (R. at 663.) Plaintiff had an aortoiliac stenting in January 2007 that was "quite successful."  (R. at 659.) After the procedure, Plaintiff had no vascular complaints, limitations, claudication (limping) or pain at rest.  (R. at 659.)  Plaintiff was subsequently released to work as a stone mason.  (R. at 637.)  During a January 2008 follow-up appointment, he reported vague sensations of limping when walking extreme distances and that he could walk "without any symptoms whatsoever" for half of a mile.  (R. at 643.)

In December 2007, Plaintiff went to St. Francis Medical Center and complained of neck pain after straining his neck after heavy lifting a few weeks earlier.  (R. at 580, 582.)  Jeffrey Zimmerman, PA-C and Richard Gill, M.D. treated Plaintiff there.  (R. at 582, 590, 626.) Plaintiff experienced no difficulties moving his extremities, no strength deficit and no edema, but a physical exam elicited some neck pain.  (R. at 584.)  Further, cervical spine x-rays revealed neither fracture nor traumatic subluxation, and only mild degenerative disc changes and disc

3

space narrowing at C5-6. (R. at 580.) Chest x-rays showed normal heart and clear lungs. (R. at 581.)

During a January 2008 appointment with Dr. Hall, Plaintiff reported shoulder and neck pain. (R. at 625.) Plaintiff noted that a sling, pain medications and steroids were ineffective. (R. at 625.) Dr. Hall referred Plaintiff to Thomas Sciosia, M.D., for an orthopedic evaluation. (R. at 614.)

Dr. Sciosia saw Plaintiff in February 2008. (R. at 614.) Dr. Sciosia's examination revealed non-severe neck pain with range of motion, no motor or sensory deficits in the upper extremities, right shoulder positive impingement signs over the rotator cuff with 5-/5 strength, full strength and normal sensation in the lower extremities, full range of motion in all other joints without pain and a normal gait. (R. at 614.) Dr. Sciosia administered an injection for his rotator cuff. (R. at 614.) Plaintiff underwent a cervical spine MRI that showed a disc osteophyte complex spurring that caused mild to moderate spinal canal stenosis and moderate foraminal stenosis at C5-6. (R. at 614.)

Dr. Sciosia ordered an EMG/nerve conduction study, which revealed a supraspinatus nerve injury, and a shoulder MRI, which showed a rotator cuff tendinopathy without full thickness rotator cuff tearing, a superior labral tear with anterior and posterior extension, and muscle edema without any impending mass. (R. at 594-95, 612-13.) During a March 2008 appointment, Dr. Sciosia noted muscle weakness and wasting in Plaintiff's shoulder, but an injection helped Plaintiff's pain. (R. at 612.) Dr. Sciosia recommended a brachial plexus MRI and consultation with a shoulder surgeon for a possible nerve release. (R. at 612.)

Dr. Hall administered a right shoulder injection in May of 2008. (R. at 622.) In June 2008, Plaintiff reported to Dr. Hall that Plaintiff was not working and had applied for disability

4

the week before. (R. at 621.) In July 2008, Dr. Hall administered a left elbow injection. (R. at 621.)

At the request and expense of the state agency, Plaintiff had consultative examinations and testing regarding pulmonary functioning and history of aortoiliac occlusive disease. (R. at 668-73, 675-77.) A spirometry test in August 2008 was consistent with a "borderline very minimal degree of airflow obstruction." (R. at 667.) Marc Warner, M.D., noted that stenting treated Plaintiff's aortoiliac occlusive disease, but Plaintiff continued reporting pain in his thighs and calves. (R. at 676.) Dr. Warner's lower extremity duplex test on Plaintiff revealed normal perfusion to the bilateral lower extremeties with near normal ankle/brachial indices and normal toe pressures. (R. at 675, 677.) No evidence of significant arterial insufficiency existed on either the left or right side. (R. at 677.)

In September 2008, Plaintiff returned to Dr. Hall and Plaintiff reported that he had been turned down for disability, because Plaintiff's lung function and lower extremity doppler exams were normal. (R. at 696.) Dr. Hall refilled Plaintiff's medications. (R. at 696.) During a November 2008 appointment, Plaintiff stated that his mother had a cancerous kidney removed. (R. at 694.) Dr. Hall again refilled Plaintiff's medications. (R. at 694.) During a February 2009 appointment, Plaintiff reported that he had taken his mother to and from Richmond for chemotherapy treatments. (R. at 736.) Plaintiff asked for a right shoulder injection in July 2009. (R. at 732.)

During Plaintiff's September 2009 appointment with Dr. Hall, Plaintiff complained of severe shoulder, neck and back pain. (R. at 777.) Dr. Hall completed a functional assessment of Plaintiff and opined that Plaintiff could not perform work at any exertional level. (R. at 749.)

Further, Dr. Hall indicated that Plaintiff's diagnoses were COPD,[2] hypertension, peripheral vascular disease, chronic shoulder pain, lumbar and cervical spine degenerative disc and lumbar spondylosis and arthritis. (R. at 750.) Dr. Hall opined that Plaintiff could not lift, bend over, walk long distances or sit for long periods and that his impairments limited his ability to maneuver his hands. (R. at 750-51.) Additionally, Dr. Hall noted that Plaintiff could be expected to miss work more than twice per month and could not work an eight-hour workday without lying down because of his back, neck, leg and shoulder pain. (R. at 752-53.)

2. State Agency Physicians' Opinions.

Catherine Howard, M.D., assessed Plaintiff's RFC on September 11, 2008. (R. at 679-85.) Based on her review of the evidence, Dr. Howard determined that Plaintiff could perform light work, stand about six hours in an eight-hour workday and sit approximately six hours in an eight-hour workday. (R. at 679-83.) Dr. Howard indicated that Plaintiff could occasionally lift or carry twenty pounds and also lift or carry ten pounds frequently. (R. at 280.) Plaintiff had unlimited ability to push and pull. (R. at 680.) Dr. Howard also noted in her review that the overall evidence suggested that Plaintiff could generally maintain his home and care for himself. (R. at 685.) Dr. Howard also noted that Plaintiff received treatments regularly for his alleged symptoms, and those treatments generally succeeded in controlling the alleged symptoms. (R. at 685.) Further, the prescribed medications were relatively effective in controlling the symptoms. (R. at 685.) Finally, Plaintiff did not need any assistance to ambulate. (R. at 585.)

State agency physician James Wickham, M.D., affirmed Dr. Howard's assessment. (R. at 700.)

---

2    COPD is "characterized by the progressive development of airflow limitation that is not fully reversible." Peter J. Barnes, *Chronic Obstructive Pulmonary Disease*, 343 New Eng. J. Med. 269, 269 (2000). COPD includes "chronic obstructive bronchitis, with obstruction of small airways, and emphysema, with enlargement of air spaces and destruction of lung parenchyma, loss of lung elasticity, and closure of small airways." *Id.*

3. Plaintiff's ADLs.

On June 27, 2008, Plaintiff completed an Adult Function Report. (R. at 370.) He noted that he sleeps on his back most of the day. (R. at 360.) Plaintiff indicated that pretty much all movements hurt his back. (R. at 361.) The pain in his shoulders and neck woke him up frequently during the day and night. (R. at 364.) He required longer to get dressed, and he could only shower, because he could not get in and out of the bath tub. (R. at 364.) He had no problem caring for his hair, shaving, feeding himself or using the toilet. (R. at 364.) Plaintiff did not do yard work or house work. (R. at 365.) Plaintiff could go out alone and drive himself. (R. at 366.) Plaintiff listed that his hobbies were reading and watching television. (R. at 367.)

Plaintiff noted that his conditions affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs and use his hands. (R. at 368.) Plaintiff had no problem talking, hearing, seeing, remembering, completing tasks, understanding and following instructions and getting along with others. (R. at 368.) He had no problem paying attention. (R. at 368.) Plaintiff further stated that he could walk two hundred yards before needing to take a ten to fifteen minute rest. (R. at 368.) He noted that he had been fired or laid off from a job because of problems getting along with other people, although he failed to explain and give the name of the employer in the blanks below his answer. (R. at 369.) Plaintiff does not need a cane, walker or brace. (R. at 369.)

Additionally, Plaintiff could handle his own finances. (R. at 366.) He did not need reminders to go places, and he did not need someone to accompany him when doing so. (R. at 367.) Further, Plaintiff had no problems paying attention, finishing what he started, following spoken instructions well and getting along well with authority figures. (R. at 368-69.)

7

On March 29, 2011, Plaintiff indicated that he was single and lived alone. (R. at 435.) He did not do chores inside or outside. (R. at 435.) Plaintiff noted that his sisters did household chores and his stepfather handled yard work. (R. at 435.) His sisters prepared his meals and sometimes he ate microwave dinners. (R. at 436.) Plaintiff did not engage in any activities, because it was difficult for him to walk due to the pain. (R. at 435.) He did not need assistance in taking care of his personal needs, although he did have to take breaks in doing so. (R. at 436.) Plaintiff spent most of his day in bed. (R. at 436.) He did not have hobbies, and he watched sports, sitcoms or old movies on television. (R. at 436.) Plaintiff drove about thirty miles each month going to and from doctor appointments. (R. at 437.)

4. Plaintiff's Testimony.

On July 11, 2011, Plaintiff, represented by counsel, testified that he neither applied for work nor worked since October 2009. (R. at 33.) He had not volunteered in that time period as well. (R. at 33.) Further, Plaintiff had not collected workers compensation or unemployment. (R. at 33.)

Plaintiff suffered numbness in his hands whenever his hands were above his waist for four to five minutes. (R. at 39.) His numbness would cause him to drop an eating utensil. (R. at 34-39.) He stated that he had a pinched nerve in his right shoulder that caused the problems. (R. at 36-37.) Plaintiff's doctor gave him shots that helped with inflammation. (R. at 38.)

Plaintiff could walk one hundred feet or twenty-five feet. (R. at 41.) His legs would go numb if he were on his feet for more than approximately twenty minutes. (R. at 41.) His severe shoulder and back pain required him to lay down for about six hours each day between 9 a.m. and 5 p.m., because walking, standing and sitting caused significant pain. (R. at 43-44.) Plaintiff slept approximately two hours each day. (R. at 47.) Plaintiff testified that he could pick

up his prescriptions from the store. (R. at 42.) He stated that if he lifted more than five pounds, he experienced back pain. (R. at 46.)

5. Vocational Expert Testimony

The ALJ asked the VE to assume an individual of Plaintiff's age, education and past work experience who could perform light work with the following restrictions: occasional overhead reaching, crouching, crawling, stooping and kneeling, as well as needing to avoid working around concentrated hazards. (R. at 57.) The VE testified that an individual with such restrictions could perform work as an information clerk, a cashier and a labeler. (R. at 57-58.) For clerk, there were approximately 98,000 nationally and 2,100 in Virginia. (R. at 58.) For cashier, there were roughly 280,000 nationally and 36,000 in Virginia. (R. at 58.) For labeler, there were approximately 149,000 nationally and 3,600 in Virginia. (R. at 58.)

The ALJ then gave Plaintiff's counsel the opportunity to pose hypotheticals expressed in functional terms to the VE. (R. at 58.) The ALJ explained to Plaintiff's counsel that counsel could ask a hypothetical saying that an individual could use his hands constantly, frequently, occasionally or not at all. (R. at 58-59.)

Plaintiff's counsel then offered a number of "assumptions" to the VE. (R. at 59.) Plaintiff's counsel stated that he would pose the questions that "assuming that these assumptions are the facts of the case[, would the VE] agree that [Plaintiff] is not capable of competitive work." (R. at 59.) The VE understood the format that Plaintiff's counsel had proposed. (R. at 59). Plaintiff's counsel then itemized the assumptions:

> The first one, if he uses his right hand to feed himself with a fork he can do this for only four or five minutes before the right hand gets numb and drops the fork involuntarily. The same is true with the opposite hand. So that's assumption one. Assumption two, if he holds his right hand above his bellybutton for four to five minutes his right hand goes numb until he lowers it below his bellybutton, same with his left hand. Third assumption, he cannot use a can opener to open a can

due to weakness and pain in his fingers. Fourth assumption, if he stays on his feet for than than 15 to 20 minutes his legs go numb and he cannot walk and has to sit down. Fifth assumption he cannot get by for eight hours at a time during the daylight part of the day without lying down for approximately six hours. That's due to pain, and sixth assumption, no lifting over five pounds. That's the end of the assumptions. Let me go to my question. If we accept these assumptions as fact do you agree that [Plaintiff] is not capable of competitive work.

(R. at 59-60.) The VE agreed that such a person would not be capable of competitive work. (R. at 60.)

## II. PROCEDURAL HISTORY

On May 30, 2008, Plaintiff filed for DBI and SSI. (R. at 115.) These claims were denied both initially and upon reconsideration. (R. at 115.) Plaintiff then filed a written request for a hearing. (R. at 115.) On October 30, 2009, Plaintiff testified at the first hearing. (R. at 115.) The ALJ determined that Plaintiff was not disabled. (R. at 123.) The Appeals Council remanded the decision, directing the ALJ to take further action to complete the Administrative record, obtain evidence from a VE and issue a new decision. (R. at 11.) On July 27, 2011, the ALJ held a second hearing with a VE. (R. at 11.) The ALJ determined that Plaintiff was not disabled. (R. at 20.) On December 27, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner and subject to judicial review by this Court. (R. at 1-3.)

## III. QUESTIONS PRESENTED

1. Does substantial evidence support the ALJ's decision to afford no weight to Plaintiff's treating physician's testimony?

2. Does substantial evidence support the ALJ's determination of Plaintiff's Residual Function Capacity (RFC)?

3. Did the ALJ err in analyzing Plaintiff's credibility?

4. Does substantial evidence support the ALJ's hypotheticals posed to the VE?

## IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence in the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, is less than a preponderance and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Id.*; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation omitted) (internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)) (internal quotation marks omitted). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Commissioner is supported by substantial evidence on the record. *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment, and the analysis

---

[3]    SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed

impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to

determine whether the claimant can return to his past relevant work[4] based on an assessment of

the claimant's RFC[5] and the "physical and mental demands of work [the claimant] has done in

the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits

will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the

analysis, such that he must prove that his limitations preclude him from performing his past

relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472.

However, if the claimant cannot perform his past work, the burden then shifts to the

Commissioner at the fifth step to show that, considering the claimant's age, education, work

experience and RFC, the claimant is capable of performing other work that is available in

significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v.

Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5). The

Commissioner can carry his burden in the final step with the testimony of a VE. When a VE is

called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the

claimant's RFC based on all evidence on record and a fair description of all of the claimant's

impairments, so that the VE can offer testimony about any jobs existing in the national economy

---

[4]     Past relevant work is defined as SGA in the past fifteen years that lasted long enough for
an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5]     RFC is defined as "an assessment of an individual's ability to do sustained work-related
physical and mental activities in a work setting on a regular and continuing basis. A 'regular and
continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."
SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to
perform sustained work activities in an ordinary work setting on a regular and continuing basis
(*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum
amount of each work-related activity the individual can perform based on the evidence available
in the case record. *Id.*

that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

### A.    The ALJ's Opinion.

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not worked since the alleged onset date of December 8, 2007. (R. at 14.) At step two, the ALJ determined that Plaintiff had severe impairments consisting of asthma/COPD, osteoarthritis of the right acromioclavicular joint and degenerative disc disease. (R. at 14.) At step three, the ALJ found that Plaintiff's impairments did not meet the criteria of any of the listed impairments. (R. at 15.) The ALJ further assessed Plaintiff's RFC and determined that Plaintiff had the capacity to perform light work with occasional crouching, crawling, stooping, kneeling and overhead reaching, but must avoid concentrated exposure to fumes, odors, pollutants, other pulmonary irritants and hazards. (R. at 15.) At step four, the ALJ determined that Plaintiff could not perform his past relevant work as a stone mason. (R. at 19.) The ALJ obtained VE testimony to determine whether jobs existed available to an individual with Plaintiff's vocational profile and RFC. (R. at 19-20.) Based on the ALJ's testimony, the ALJ determined that Plaintiff could perform work as a cashier, an information clerk and a labeler. (R. at 20.) At step five, the ALJ concluded that Plaintiff was not disabled. (R. at 20.)

14

B.     Substantial evidence supports the ALJ's decision to afford no weight to Plaintiff's treating physician's testimony.

Plaintiff argues that the ALJ erred in giving no weight to Dr. Hall's opinion. (Pl.'s Mem. at 3-6.) Defendant argues that substantial evidence supports the ALJ's determination. (Def.'s Mem. at 11-14.) The Court finds that substantial evidence supports the ALJ's decision to afford no weight to Dr. Hall's opinion and speculation.

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. *See* 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. *See* 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d).

Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Craig*, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, *e.g.*, when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an

issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported.  20 C.F.R. § 404.1527(d)(3)-(4), (e).

In this case, the ALJ afforded Dr. Hall's opinion no weight.  (R. at 18.)  The ALJ determined that while Dr. Hall's opinion was consistent with Plaintiff's self-reported symptoms, Dr. Hall's opinion was inconsistent with the mild-to-moderate findings on diagnostic tests, the generally normal findings of physical examinations and Plaintiff's response to that care.  (R. at 18.)

Dr. Hall determined that Plaintiff had a limited ability to maneuver his hands, but could not lift anything, bend over, stand for longer than thirty minutes, walk for thirty minutes and sit for long periods.  (R. at 749-51.)  Further, Dr. Hall opined that Plaintiff could not perform any work at any exertion level.  (R. at 749-51.)   Dr. Hall noted that Plaintiff could not walk significant distances.  (R. at 751.)

This assessment is inconsistent with objective medical evidence.  Plaintiff had no strength deficit in his extremities when he went to St. Francis in December 2007.  (R. at 584.) Plaintiff reported in January 2008 that after his aortoiliac stenting that Plaintiff could walk approximately a half of a mile without symptoms.  (R. at 643.)  Dr. Sciosia reported in February 2008 that Plaintiff had a normal gait and that Plaintiff had full strength and normal sensation in his lower extremities.  (R. at 643.)  Further, Dr. Sciosia noted right shoulder positive impingement signs over the rotator cuff with 5-/5 strength.  (R. at 614.)  Dr. Warner's lower extremity duplex test showed normal perfusion to the bilateral lower extremities with near normal ankle/brachial indices and normal toe pressure.  (R. at 675, 677.)  Additionally, Dr. Howard indicated that Plaintiff could lift or carry ten pounds frequently or occasionally lift or carry twenty pounds.  (R. at 680.)

Plaintiff's own reports contradict Dr. Hall's opinions. In 2009, Plaintiff testified that he could lift five to ten pounds. (R. at 82.) Plaintiff reported that he did not need a cane, walker or brace. (R. at 369) Further, he could go out alone and drive himself to and from doctor appointments. (R. at 437.) He had no problem following instructions or getting along with others. (R. at 368.) He could get dressed, shower, care for his hair, shave, feed himself and use the toilet. (R. at 364.) Plaintiff could handle his own finances as well, and he did not need reminders to go places. (R. at 367-69.) Therefore, substantial evidence supports the ALJ's determination to afford no weight to Dr. Hall's opinion and speculation.

C.   Substantial evidence supports the ALJ's determination that the Plaintiff retained the RFC for light work with certain restrictions.

Plaintiff argues that the ALJ's determination that Plaintiff retained the physical RFC is not supported by substantial evidence. (Pl.'s Mem. at 6-10.) Defendant responds that the ALJ's determination is supported by substantial evidence. (Def.'s Mem. at 14-16.) The Court concludes that substantial evidence supports the ALJ's determination that Plaintiff retained the ability to perform a reduced range of light work.

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). In analyzing a claimant's abilities, an ALJ will first assess the nature and extent of the claimant's physical limitations, and then determine the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b). Generally, it is the responsibility of the claimant to provide the evidence that the ALJ utilizes in making his RFC determination; however, before a determination is made that a claimant is not disabled, the ALJ is responsible for developing the claimant's complete medical history, including scheduling consultative examinations if necessary. 20 C.F.R. § 404.1545(a)(3). The

RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints.

After considering all of Plaintiff's physical and mental impairments, the ALJ found that Plaintiff

> ha[d] the residual functional capacity to perform light work . . . except [that] he can occasionally crouch, crawl, stoop, kneel, and do overhead reaching work, he must avoid exposure to concentrated fumes, odors, pollutants, and other pulmonary irritants, and he needs to avoid working around concentrated hazards due to medication side effects.

(R. at 15.) Performing light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Further, light work "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

Substantial evidence supports the ALJ's RFC determination. After Plaintiff's aortoiliac stenting, Plaintiff was released to return to work as a stone mason. (R. at 637.) In December 2007, Plaintiff went to St. Francis complaining of neck pain after heavy lifting. (R. at 580, 582.) Although a physical exam elicited some neck pain, Plaintiff had no have difficulty moving his extremities and did not have strength deficit. (R. at 584.) In February 2008, Dr. Sciosia examined Plaintiff and found no motor or sensory deficits in the upper extremities, full strength and normal sensations in the lower extremities, right shoulder positive impingement signs over the rotator cuff with 5-/5 strength, and a normal gait. (R. at 614.) Dr. Howard's review of the evidence indicated that Plaintiff could perform light work. (R. at 696.) Upon review at the reconsideration level, Dr. Wickham affirmed Dr. Howard's assessment. (R. at 700.)

Plaintiff's own statements further support the ALJ's determination. In 2009, Plaintiff testified that he could lift five to ten pounds. (R. at 82.) He could walk "a couple hundred

yards" before having to take a break. (R. at 82-83.) Plaintiff reported that he did not need a

cane, walker or brace. (R. at 369) He could sit for thirty to thirty five minutes and stand for

twenty to thirty minutes. (R. at 82.) He could get dressed, shower, care for his hair, shave, feed

himself and use the toilet. (R. at 364.) Plaintiff could handle his own finances as well, and he

did not need reminders to go places. (R. at 367-69.) Additionally, he could go out alone and

drive himself to and from doctor appointments. (R. at 437.) He had no problem following

instructions or getting along with others. (R. at 368.)

Therefore, substantial evidence supports the ALJ's determination that Plaintiff could

perform light work with certain restrictions.

D.      The ALJ did not err in assessing Plaintiff's credibility.

Plaintiff next argues that substantial evidence does not support the ALJ's credibility

determination. (Pl.'s Mem. at 10-11.) Defendant counters that substantial evidence supports the

ALJ's credibility determination. (Def.'s Mem. at 14-16.) Substantial evidence supports the

ALJ's credibility determination.

After step three of the ALJ's sequential analysis, but before deciding whether a claimant

can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20

C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The RFC must incorporate impairments supported by

the objective medical evidence in the record and those impairments that are based on the

claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must

follow a two-step analysis. *Craig v. Charter*, 76 F.3d 585, 594 (4th Cir. 1996); *see also* SSR 96-

7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an

underlying medically determinable physical or mental impairment or impairments that

reasonably could produce the individual's pain or other related symptoms. *Id.*; SSR 96-7p, at 1-

3. The ALJ must consider all the medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; *see also* SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. *See Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. *See Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which

could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

In this case, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. at 17.) The ALJ, however, did not find Plaintiff's statements about the intensity, persistence and limiting effects of the symptoms to be credible to the extent that those symptoms were inconsistent with the RFC assessment, which indicated that Plaintiff could perform light work with certain limitations. (R. at 17.) Substantial evidence supports the ALJ's credibility determination.

Plaintiff's reports of his pain are inconsistent with his own statements and other medical evidence. Plaintiff reported to Dr. Hall that pain medications were ineffective. (R. at 625.) Plaintiff stated, however, that injections helped with the pain. (R. at 612.) Further, Dr. Sciosia's examination in February 2008 elicited some neck pain, but that pain was not severe. (R. at 614.) Dr. Sciosia reported that Plaintiff had full range of motion in his joints without pain and further that Plaintiff had a normal gait. (R. at 614.) Dr. Howard noted that Plaintiff's treatments and prescriptions generally succeeded in controlling his symptoms. (R. at 685.) Additionally, Plaintiff needed no assistance in ambulating. (R. at 585.) Plaintiff reported that he did not need a cane, walker or brace. (R. at 369.) He could walk two hundred yards before needing to rest. (R. at 368.) He had no problem paying attention, finishing what he started or following instructions. (R. at 368-69.)

Generally, it is not the province of a reviewing court to make credibility determinations. *Radford v. Colvin*, __ F.3d __, 2013 WL 5790218, at *7 (4th Cir. Oct. 29, 2013) In this case, the ALJ's credibility determination was not one of "exceptional circumstances." *Edelco, Inc.*, 132

F.3d at 1011 (quoting *Air Prods. & Chems., Inc.*, 717 F.2d at 145) (internal quotation marks omitted).  Accordingly, substantial evidence supports the ALJ's determination.

      E.      Substantial evidence supports the ALJ's hypotheticals posed to the VE.

      Plaintiff argues that the VE's testimony supports a fully favorable decision for Plaintiff. (Pl.'s Mem. at 11-12.)  In the alternative, Plaintiff contends that the hypotheticals posed to the VE were flawed.  (Pl.'s Mem. at 12.)  Defendant responds that the hypotheticals accurately captured all of Plaintiff's limitations.  (Def.'s Mem. at 16-17.)  The Court finds that the VE's testimony does not support a fully favorable decision for Plaintiff and that the ALJ did not err in posing hypotheticals to the VE.

      At the fourth step of the sequential analysis, the ALJ must assess the claimant's RFC and past relevant work to determine if the claimant is able to perform the tasks of his or her previous employment.  20 C.F.R. § 404.1520(a)(4)(iv).  The analysis requires that the ALJ evaluate all of the factors that contribute to the claimant's RFC, as well as the physical and mental demands of the claimant's past relevant work.  20 C.F.R. § 404.1520(f).  In making the determination, the ALJ is permitted to utilize vocational experts, vocational specialists or other resources to determine whether a claimant can perform his/her past relevant work.  20 C.F.R § 404.1560(b)(2).  When utilizing a VE in this capacity, the VE may offer expert opinion in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work. *Id.*

      Plaintiff's argument that the hypothetical posed to the VE directs a fully favorable verdict fails.  (Pl.'s Mem. at 11-12.)  The hypothetical that Plaintiff references is one formulated by Plaintiff's counsel listing a number of "assumptions."  (R. at 59-60.)  Plaintiff's counsel did not

pose a hypothetical question consistent with Plaintiff's RFC. As stated above, substantial evidence supports the ALJ's RFC assessment of Plaintiff. Accordingly, Plaintiff's counsel did not pose an appropriate hypothetical to the VE and cannot dictate the awarding of benefits.

Plaintiff argues in the alternative that the ALJ did not include appropriate limitations for Plaintiff's use of his arms or hands. (Pl.'s Mem. at 12.) The ALJ is only required to convey to the VE those limitations that the ALJ considers credibly established. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3rd Cir. 2005). The ALJ determined that Plaintiff had the RFC to perform light work with certain limitations. (R. at 15.) As described above, substantial evidence supports the ALJ's RFC determination. Because substantial evidence supports the ALJ's RFC determination and the ALJ included that determination in the hypothetical posed to the VE, the VE's testimony was proper.

## VI. CONCLUSION

For the reasons set forth herein, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 7) be DENIED; that Defendant's Motion for Summary Judgment (ECF No. 12) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to and all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure**

shall bar you from attacking on appeal the findings and conclusions accepted and adopted

by the District Judge except upon grounds of plain error.

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: November 15, 2013